**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Jefferson GORDON, Jr. and
Larry Lawrence Johnson,
Defendants–Appellants.**

No. 88–1689
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 22, 1989.

William R. Maynard, Asst. Federal Public Defender, El Paso, Tex., for Gordon.

Arvel R. Ponton, III, El Paso, Tex. (court-appointed), for Johnson.

LeRoy Morgan Jahn, Michael R. Hardy, Asst. U.S. Attys., San Antonio, Tex., and Helen M. Eversberg, U.S. Atty., El Paso, Tex., for U.S.

Before GARWOOD, JOLLY and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendants-appellants Thomas Jefferson Gordon (Gordon) and Larry Lawrence Johnson (Johnson) were convicted for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. They appeal on the grounds that their distribution convictions are not sufficiently supported by the evidence, evidence was excluded by the court in violation of Johnson's rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Sixth Amendment, the court erred in denying Johnson a mistrial because of the prejudicial statements of Gordon's attorney during closing arguments, and the federal sentencing guidelines are unconstitutional, and were improperly applied as to Gordon. We rule against the appellants on all of these challenges and accordingly affirm their convictions and sentences.

## Facts and Proceedings Below

The conspiracy for which Johnson and Gordon were convicted involved two additional co-conspirators, Irene Parker and John Wayne Pace. All four were arrested during an undercover operation by Drug Enforcement Administration (DEA) agents arranged through a confidential informant. The evidence presented at trial showed that in December 1987 Pace asked Parker, who had recently begun acting as his drug courier, if she knew anyone who might need a large quantity of cocaine. Parker called the informant in El Paso, who referred her to appellant Johnson, and she then called Johnson. Johnson called back in February 1988 to tell Parker that he had a buyer for the cocaine.

Pace and Parker then made arrangements to fly together from Los Angeles to El Paso on March 10, 1988. They checked into separate rooms at the Westin Hotel in El Paso, and Parker took the suitcase with the cocaine in it to her room. That night Johnson picked Parker up at the hotel and took her to his house, where appellant Gordon was waiting. Parker gave Gordon a cocaine sample in "rock form." After approximately an hour, Parker returned to the Westin.

During the early afternoon of March 11, 1988, DEA Special Agent Perkins (Perkins), posing as a cocaine buyer, was introduced by the informant to Gordon and Johnson in the parking lot of a Village Inn in El Paso. Both appellants told Perkins they were ready to make a "deal"; Johnson told Perkins he had two kilograms ready and could have eight more kilos the next day. He said that a girl from California (Parker) had the two kilograms in a room at the Westin.

Johnson suggested that Perkins get his money and that they complete the transaction in the hotel room, but Perkins refused. Johnson then took a plastic baggie containing a sample of rock cocaine from his coat pocket. He and Gordon guaranteed "that it was really good stuff," and Johnson told Perkins that the sale price would be $18,-000 per kilogram. Gordon instructed Johnson to give Perkins a sample of the cocaine. Gordon removed the cellophane wrapper from a package of cigarettes and held it open while Johnson poured some of the cocaine into the cellophane. Gordon gave that as a sample to Perkins.

Perkins then suggested that they complete the transaction in the parking lot. After further negotiations, they agreed to meet again in one hour in the north parking lot of the El Paso Marriott Hotel. Johnson went to the hotel room to meet Pace and Parker, and the three of them left together to meet with Perkins, Gordon, and the informant, who were waiting in the parking lot of the Marriott. As they waited for Johnson, Pace, and Parker, Gordon explained to Perkins how he had set up the transaction. When Pace arrived, Perkins and Pace further negotiated the location of the transaction without success. Pace and Parker went back to the hotel room.

Fifteen minutes later, Johnson advised Perkins that Pace had sent "the girl" down with the cocaine and that she was in Johnson's car. When Johnson and Perkins approached the car, Gordon was in the driver's seat and Parker was alone in the back seat holding a piece of luggage under her left arm. Johnson opened the driver's door and told Gordon to get out of the car. Gordon did so and got into Perkins' car where the confidential informant was seated. Johnson then got into the driver's seat of his own car and Perkins sat in the front passenger seat.

Johnson told Parker to show Perkins the cocaine. At Parker's request, the car was driven to the other side of the parking lot. After this, Parker finally opened the suitcase and showed Perkins its contents: some articles of clothing and two bundles wrapped in brown tape. Johnson called out of the driver's window for a knife and Gordon, seated in the car beside Johnson's, handed Johnson a box cutter. Johnson handed the cutter to Parker, who cut one of the corners of the package and placed some of the cocaine into the palm of Perkins' hand.

After Perkins expressed his satisfaction with the sample, Johnson and Perkins got out of the car to go get the money. Perkins then gave the predesignated arrest signal to the waiting surveillance officers. As Johnson and Perkins were walking away from Johnson's car, a vehicle with the two DEA agents in it came around the corner. When one of them got out and identified himself to Johnson, Johnson fled on foot but was apprehended after he lost his footing. Gordon and Parker, who had driven out of the parking area in Johnson's car, were apprehended two blocks away by El Paso police officers.

Testimony at trial confirmed that the substance Parker gave to Perkins in the car was cocaine, with a purity of eighty-five percent. The street value of the 2000 grams of cocaine seized was between $450,-000 and $480,000.

The jury convicted Johnson and Gordon on both counts of the indictment. They received the same sentence: two concurrent prison terms of eighty-four months, followed by two concurrent five-year terms of supervised release. They were also ordered to pay a $100 crime-victim fund assessment. Pace was convicted but did not join in this appeal, and Parker pleaded guilty to the drug conspiracy charge and agreed to testify at trial, which she did, implicating Pace and appellants.

## Discussion

As a preliminary matter, both appellants assert that the sentencing guidelines are unconstitutional. Their arguments are foreclosed, however, by the Supreme Court's recent decision in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). *See also United States v. White*, 869 F.2d 822 (5th Cir. 1989). To the extent that appellant Gordon's sentencing guidelines challenges are not answered by *Mistretta*, they will be considered below.

### I. *Sufficiency of the Evidence of Distribution*

Appellants' next challenge is to the sufficiency of the evidence supporting their convictions for distribution.[1] "When a challenge is made to the sufficiency of the evidence to sustain an appellant's conviction, the question on appeal is whether there is substantial evidence, viewed in the light most favorable to the government, to uphold a jury's guilty verdict." *United States v. Arzola–Amaya*, 867 F.2d 1504, 1511 (5th Cir.1989). The evidence need not be wholly inconsistent with every conclusion except guilt, provided that a reasonable jury could find that guilt was established beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd on another point*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

---

**1.** Neither appellant challenges the sufficiency of the evidence against him on the conspiracy count.

A conviction for distributing cocaine requires proof that the defendant (1) knowingly (2) distributed (3) cocaine. 21 U.S.C. § 841(a)(1); *United States v. McDonald*, 692 F.2d 376, 378 (5th Cir.1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). The Drug Abuse and Prevention and Control Act defines "distribute" as "to deliver (other than by administering or dispensing) a controlled substance." 21 U.S.C. § 802(11). "Delivery" is defined as the "actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8).

■ The government argues that the convictions of appellants for distribution can be sustained because ample evidence in the record supports a jury finding beyond a reasonable doubt that appellants attempted to transfer cocaine. Appellants correctly counter, however, that the trial court's charge did not authorize the jury to convict on this count on the basis of attempted transfer, and this definition of deliver cannot therefore serve as the basis of appellants' convictions. *See United States v. Abod*, 770 F.2d 1293, 1295 n. 1 (5th Cir. 1985) (court's instructions, to which the government does not object, become the law of the case); *United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir.1976).

■ Alternatively, the government asserts that even relegated to the jury charge requiring a finding of actual delivery, and although the indictment charges distribution of "500 grams or more" of cocaine, appellants' convictions must be sustained because they delivered smaller amounts of cocaine when they allowed Perkins to sample their merchandise.[2] We have held that "quantity is not an element of the crimes proscribed by §§ 841(a)(1) and 846 and need only be proved when the Government seeks an enhanced penalty." *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir.1987) (where defendant was charged with possession of over one hundred kilos of marihuana, but government stipulated that the defendant had possessed over fifty kilos); *see also United States v. Hanson*, 835 F.2d 815, 817 (11th Cir.1988). All the cocaine that appellants transferred (or aided and abetted the transfer of) to Perkins was part of the five hundred grams mentioned in the indictment, and the amounts actually transferred to Perkins are enough to sustain appellants' convictions for distribution.

■ We next examine appellants' sentences, which under the sentencing guidelines *are* based on the quantities of drugs appellants distributed, possessed, etc. The district court sentenced both Johnson and Gordon to eighty-four months in accordance with its finding that each had an offense level of twenty-eight under the guidelines. Because each had a zero criminal history rating and no offense level adjustments, the court could impose a sentence of 78–97 months for either distributing or conspiring to distribute two kilograms of cocaine. *See* Sentencing Guidelines, §§ 2D1.1(a)(3), 2D1.4, Table, Ch. 5, Part A. Under sections 3D1.2(b)(1) and 3D1.3(a), convictions of conspiracy to commit a crime and commission of the crime that was the object of the conspiracy are to be grouped together and the defendant's offense level is that dictated for the most

---

2. We have no problem upholding appellants' convictions for distribution of these small amounts based at least on their participation as aiders and abetters. *See United States v. Oquendo*, 505 F.2d 1307, 1310 n. 1 (5th Cir.1975). The conviction should be affirmed if the record contains sufficient evidence to support a finding that appellants willfully participated in the distribution as they would something they wished to bring about. *See United States v. Graham*, 858 F.2d 986, 991 (5th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989).

The trial court properly instructed the jury on aiding and abetting.

The evidence supports a finding that Johnson and Gordon aided and abetted the distribution of a sample of the cocaine contained in Parker's suitcase. At Johnson's request, Parker showed Perkins the cocaine in her suitcase. Johnson asked for a knife to open one of the packages, and Gordon supplied him with a box cutter. Johnson gave the cutter to Parker, who cut one of the corners of the package and placed some of the cocaine into Perkins' hand. There was ample evidence to show that Gordon and Johnson associated themselves with the criminal venture and participated in it as something they wished to bring about.

serious of the counts comprising the group. Although the amount of cocaine involved was not an element of the crimes for which appellants were convicted, the amounts do dictate the offense level to be used under the guidelines to determine the applicable sentence. *See United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989) (citing Note 11 to guideline § 2D1.1 to support holding that "[t]he guidelines make plain that the district court is not bound by the quantity of drugs mentioned by the indictment."); *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (same).

The evidence clearly showed that appellants conspired to distribute two kilograms of cocaine, for which the guidelines assign an offense level of twenty-eight. Sections 2D1.1(a)(3) and 2D1.4. The evidence also showed that appellants actually completed delivery of amounts much less than two kilograms (the samples), for which the offense level is less than twenty-eight. Section 2D1.1(a)(3). As stated, these two convictions should be grouped together and the higher offense level used to determine the appropriate sentence range. The court did in fact use level 28, and the sentences of 84 months are within the 78-to-97-month range assigned for an offense level of 28. Thus, we see no problems with appellants' sentences in relation to the amounts of cocaine the government proved at trial.

## II. *Court's Refusal to Allow Address Book into Evidence*

■ Johnson argues that he was denied access to Irene Parker's address book in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and his Sixth Amendment right to confront witnesses against him (Gordon makes no complaint in this respect). Johnson asserts that the address book—which Perkins testified contains the names and phone numbers of suspected drug traffickers—was relevant to impeach Parker's testimony because, according to Johnson's appellate brief, that testimony "left an impression with the jury that she was relatively innocent in the ways of major cocaine transactions."

We find Johnson's assertions without merit. First, Perkins also testified that the book did not contain notations relevant to the drug transaction for which appellants were convicted, or to Johnson himself, and this testimony was not controverted. The court also inspected the address book and found it irrelevant to Johnson's defense. Johnson has offered no reason why the contents of the book are relevant to what Parker saw and testified about.

Further, Parker stated on direct examination simply that she had previously "[n]ever done a transaction in that capacity [in a parking lot]...." Parker admitted in her testimony that the book had information she had entered on weights and prices relating to various cocaine transactions. Nothing in the book controverts Parker's admitted role as the courier in previous transactions for Pace. Nothing in the record shows that the address book is favorable and material to Johnson's defense, as is required for a valid *Brady* complaint. *United States v. Lanford*, 838 F.2d 1351, 1355 (5th Cir.1988); *Brogdon v. Blackburn*, 790 F.2d 1164, 1167 (5th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct.1985, 95 L.Ed.2d 824 (1987).

Johnson was permitted to cross-examine both Parker and Perkins about the book's contents. Neither *Brady* nor the Sixth Amendment require more in this instance. Even if exclusion of the address book was inappropriate, this would not require reversal because overwhelming evidence in the record supports Johnson's convictions. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

## III. *Court's Refusal to Grant Johnson a Mistrial*

■ Johnson argues that his motion for mistrial, based on the closing argument of co-defendant Gordon, was error. He claims that counsel for Gordon spent much of his closing argument attempting to paint Johnson as the person who coordinated the cocaine transaction. Johnson—who at no time moved for a severance of his prosecution from that of his co-defendants—as-

serts that Gordon's closing argument rendered his trial unfair.

A denial of a motion for mistrial will be reversed only if the movant establishes an abuse of discretion by showing "that the improper material viewed in the context of the whole trial was so prejudicial that it had a substantial impact on the verdict." *United States v. Merida,* 765 F.2d 1205, 1220 (5th Cir.1985). Johnson has not made such a showing.

In his arguments before the jury, an attorney may state the fair inferences and conclusions he wishes the jury to draw from the evidence presented at trial. *United States v. Davis,* 831 F.2d 63, 66 (5th Cir.1987). Johnson does not contend that no evidence supports the inference argued by Gordon's counsel that Johnson was largely responsible for the cocaine transaction with Perkins. The record does in fact contain evidence to support the remarks made by Gordon's counsel. Although it is possible that Johnson had no greater part in the transaction than Gordon, the suggestion that Johnson played the predominant role was a permissible inference drawn from the evidence presented at trial. The remarks were not "so prejudicial that [they] had a substantial impact on the verdict."

IV. *Application of the Sentencing Guidelines*

■ Gordon complains that the sentencing court erred in refusing to lower his offense level for acceptance of criminal responsibility and for his "minor" role in the criminal conduct. As a reviewing court we must

"uphold a sentence unless the sentence was 'imposed in violation of law,' or was 'imposed as a result of an incorrect application of the sentencing guidelines,' or was 'outside the range of the applicable sentencing guidelines, and is unreasonable.' 18 U.S.C. § 3742(d) and (e). The reviewing court 'shall accept the findings of fact of the district court unless they

are clearly erroneous.' 18 U.S.C. § 3742(d)." *United States v. Buenrostro,* 868 F.2d 135, 136–37 (5th Cir.1989). *See also Sarasti,* 869 F.2d at 806.[3]

Gordon argues that the district court's failure to award him a two-point reduction for acceptance of responsibility, shown through his voluntary admission and failure to attempt to flee the police, was error. *See* Sentencing Guidelines, section 3E1.1 (court may adjust offense level if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility" for his criminal conduct). This determination is a factual question, *Thomas,* 870 F.2d at 176, subject to the clearly erroneous standard of review.

Based on the evidence, the court's finding that Gordon did not accept responsibility is not clearly erroneous. Just before his arrest, at Parker's suggestion, Gordon drove away to avoid the trouble anticipated from the approaching cars that turned out to be police. He did not stop the car until police, with guns drawn, caused him to stop. Neither does Gordon's post-arrest confession show cooperation. He told the interrogating law enforcement officer that he was "just there" at the Marriott with Johnson and other people he did not know. The interrogating officer testified that Gordon was being "very vague." In addition, Gordon's statement during allocution did not reflect much remorse or contrition: "I know the crime was bad, but it's too late now to think about it. All I wish is, like my lawyer said, the lowest time possible so I can hurry up and finish my life. Thank you."

Finally, Gordon did not plead guilty to the charges against him. "A defendant who puts the government to its proof by challenging factual guilt may find it difficult, after conviction, to persuade the district court that he is entitled to this reduction." *United States v. White,* 869 F.2d 822, 826 (5th Cir.1989); *see also Thomas,* 870 F.2d at 177. To the extent that Gordon argues that section 3E1.1 places an uncon-

---

3. The November 18, 1988, amendment to section 3742(d) did nothing to remove any finding of fact from the protection of the clearly erroneous rule. *United States v. Mejia–Orosco,* 868 F.2d 807, 808 (5th Cir.1989).

stitutional restriction on his right to trial by jury under the Sixth Amendment and the right to remain silent under the Fifth Amendment, this argument is foreclosed by *White*. "The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized." *Id.* Gordon was not "punished" for exercising his constitutional right to remain silent and to request a jury trial.

■ Similarly, the court's finding that Gordon was not a "minor participant" under section 3B1.2 is not clearly erroneous. *Cf. Buenrostro,* 868 F.2d at 137 (participant status is also a factual determination protected by the clearly erroneous standard). The district court also found that

"all four of the Defendants in this case ... were roughly of equal culpability....

"... I'm unable to conclude from the evidence I heard, or as supplemented by what's in the presentence reports that any one individual was more of a manager or organizer or supervisor than any other."

This finding is a reasonable deduction from the record and is not clearly erroneous or an abuse of discretion.

### Conclusion

Sufficient evidence supports appellants' convictions for distribution of cocaine, even though the government did not prove that appellants distributed as much as the entire amount stated in the indictment. The sentence is also appropriate in light of the amounts actually proved at trial. Further, the court did not violate appellant Johnson's rights under *Brady* or his Sixth Amendment right to confront witnesses by excluding co-defendant Parker's address book; and the exclusion, even if error, was clearly harmless. Neither were Johnson's rights violated by co-defendant Gordon's closing jury arguments urging the permissible conclusion that Johnson was more responsible than Gordon for the criminal venture. Finally, the sentencing court's findings that Gordon was not entitled to any downward adjustments of his sentencing guidelines offense level were not clearly

erroneous. The judgment of the district court is therefore

AFFIRMED.