**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cesar Vincente FABREGAT,
Defendant–Appellant.**

**No. 89–7030
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 18, 1990.

Desiderio Trevino, Jr., David Garcia, Edinburg, Tex., for defendant-appellant.

LeRoy M. Jahn, Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:

Cesar Vincente Fabregat appeals his conviction and sentence for conspiring to possess marijuana and possessing marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 846. We affirm.

I

In May and June of 1988 Texas Department of Public Safety Narcotics Investigator Dwight Hardin received information from another D.P.S. agent, Investigator Adon Balesteros, that a Cessna 206 aircraft bearing tail number N3422L was being used by a Brownsville, Texas, smuggling organization to transport marijuana from Brownsville to Austin, Texas, and other locations. According to the informant the organization transported the marijuana in cardboard boxes. The organization typically transported the marijuana during the middle of the day, a somewhat unusual occurrence. When the aircraft landed it was met by a van which transported the marijuana to its ultimate destination. According to Investigator Hardin the informant relied upon by Investigator Balesteros had provided accurate and reliable information to D.P.S. investigators in the past.

On November 19, 1988, Investigator Robert Nestoroff observed the suspect Cessna 206 at Executive Air Park in Austin. He approached the aircraft and observed that the rear seats of the plane had been removed, arousing his suspicion that the plane was used to smuggle marijuana. Investigator Nestoroff asked a confidential informant who frequented the air park to keep an eye out for the Cessna 206.

On the afternoon of December 7, 1988, the air park informant contacted D.P.S. Sergeant Kenneth Dismukes and told him that the Cessna 206 had just landed. He told Sergeant Dismukes that a van met the plane and that cardboard boxes were being unloaded from the plane and placed in the van by two Hispanic males. The informant described the van as white in color with "Longhorn Van and Truck Rental" on its side with license plate number 1802 GL.

Armed with the information received from Sergeant Dismukes, Investigator Hardin and other officers drove to the air park. On the way Investigator Hardin met the white van described above. He ob-

served two individuals riding in the van and the tops of several boxes in the rear of the van. Investigator Hardin decided to conduct an investigatory stop in order to determine the identity of the individuals in the van. He asked both occupants to step out of the van. The passenger was Fabregat and the driver was Alberto Martin, Fabregat's codefendant. Investigator Hardin approached them. As he got closer to them he smelled marijuana from the van through the open driver's side window. Investigator Hardin then arrested Fabregat and Martin. Fabregat was advised of his constitutional rights. He acknowledged those rights and, after debriefing, admitted that he was the pilot of the plane and that the boxes contained marijuana. Later, he confessed after being advised of his rights again.

On March 7, 1989, the grand jury returned a two count indictment charging Fabregat with conspiring to possess marijuana and possessing marijuana with intent to distribute. Before trial Fabregat moved to suppress the evidence. The district court denied the motion after a hearing. A jury found Fabregat guilty on both counts.

The district court sentenced Fabregat to 108 months imprisonment on the conspiracy count and 108 months on the possession count, to run concurrently. The court imposed a $50,000 fine on the conspiracy count and a $100 special assessment pursuant to 18 U.S.C. § 3565. The court also ordered a five year term of supervised release. This appeal followed.

## II

■ Fabregat argues that the investigatory stop of the van was not a valid stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He argues that the stop was improper because it was not supported by reasonable suspicion based upon "specific and articulable facts which, taken together with rational inferences taken from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1879. This argument is meritless. Hardin had information about a smuggling operation involving a Cessna 206 with tail number N3422L transporting marijuana during daylight hours in cardboard boxes from Brownsville to Austin where the boxes of marijuana were picked up by a van and transported to their ultimate destination. He knew that the van Fabregat was riding in was transporting cardboard boxes which had just been unloaded during daylight hours from the suspect Cessna 206. The stop was based upon reasonable suspicion that criminal activity was afoot supported by specific articulable facts.

## III

■ Fabregat objects to the $50,000 fine the district court imposed. He argues that the district court erred in considering his family's wealth as a financial resource available to him in determining his ability to pay the fine and requests a remand for resentencing.

The Sentencing Guidelines list seven factors courts are to consider in determining the amount of a fine:

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) *the ability of the defendant to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;*

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

U.S.S.G. § 5E1.2(d) (emphasis added); *see also* 18 U.S.C. § 3572 (setting out factors

to be considered in imposing fines in criminal cases).

The court considered the wealth of Fabregat's family as one of his "financial resources." We cannot say as a matter of law that the wealth of an individual's family is never a financial resource which can be considered in determining defendant's ability to pay a fine. The Guidelines certainly do not preclude the wealth of the defendant's family from being considered, and, in reality, the wealth of a defendant's family can be a very significant asset to the defendant in particular cases.

The court's finding that the wealth of Fabregat's family was one of his financial resources is supported by the record. The presentence report states that Fabregat "is a member of a rather wealthy upper class family in Mexico City that has significant financial resources." It also notes that his family paid for his college education, his legal expenses, and other expenses, indicating their willingness to share their significant resources with him. Further, Fabregat does not deny that his family would be willing to help pay his fine. He argues only that it was inappropriate for the court to consider his family's wealth. Because the court properly considered the wealth of Fabregat's family as one of his financial resources, a remand for resentencing on this ground is unnecessary.[1]

### IV

■ Finally, Fabregat argues that the district court erred in refusing to credit him with two points for acceptance of responsibility for his criminal conduct under § 3E1.1 of the Guidelines. A defendant is not entitled to a two point reduction unless he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility" for his criminal conduct. U.S.S.G.

§ 3E1.1(a); *United States v. Nevarez–Arreola,* 885 F.2d 243, 245–46 (5th Cir.1989) (per curiam). Whether a defendant has accepted responsibility is a factual question based largely on an appraisal of the defendant's sincerity. *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989); *United States v. Gordon,* 876 F.2d 1121, 1127 (5th Cir.1989); *United States v. Barreto,* 871 F.2d 511, 513 (5th Cir.1989). Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the standard of review is even more deferential than a pure clearly erroneous standard. *Nevarez–Arreola,* 885 F.2d at 245.

Fabregat first argues that the district court improperly denied him two points for acceptance of responsibility because he asserted his right to a jury trial, unconstitutionally punishing him for exercising that constitutional right. This argument, however, not only lacks factual merit, but also is foreclosed by earlier panel decisions. *See Gordon,* 876 F.2d at 1127; *see also United States v. White,* 869 F.2d 822, 826 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *Thomas,* 870 F.2d at 176.

■ Fabregat also argues that the district court improperly based its acceptance of responsibility determination on his failure to disclose who owned the airplane. He asserts that considering his failure to disclose this information was improper because the government could obtain this information through other means, particularly by checking registration information. This argument too is without merit. First, the district court did not rely solely on Fabregat's failure to provide the name of the owner of the plane. The court in fact relied upon Fabregat's total unwillingness to provide any information about the smug-

---

1. We note that the district court did not base the fine solely upon the wealth of Fabregat's family. The presentence report, after discussing the wealth of Fabregat's family as an asset available to Fabregat, states that

[a]s a highly educated and intelligent young man who apparently has fairly well developed skills as an aircraft pilot and businessman, Mr. Fabregat does have sufficient knowledge,

skills, and intelligence to earn a comfortable living for himself. He could be expected to pay a substantial fine over a period of time.

The report also states that Fabregat has a net worth of $12,420 which would be available to pay the fine. Fabregat did not object to these findings. The record supports the court's finding that Fabregat could pay a $50,000 fine.

gling operation and its participants, a circumstance appropriately considered by the court in determining whether Fabregat accepted responsibility. *See United States v. Tellez*, 882 F.2d 141, 143 (5th Cir.1989). Second, whether the government could have independently obtained some of the information it sought from Fabregat is irrelevant. Even if the government could have independently obtained the information it sought, Fabregat's complete refusal to cooperate is evidence that he did not accept responsibility.

Finally, Fabregat points out that he confessed to D.P.S. officers and that he said he accepted responsibility at the sentencing hearing. His admissions, however, are not conclusive evidence that he accepted responsibility. He admitted that there was marijuana in the van, but the van reeked of marijuana and the officer was about to search the van. He admitted that he flew the marijuana into Austin, but he was found in possession of a valid pilot's license. As for his acceptance of responsibility at the sentencing hearing, only the district court is in a position to evaluate his sincerity.

AFFIRMED.