**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 6, 2012

No. 10-60992

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

WILLIAM MICHAEL WARD; MARC ANTHONY BAZALDUA; LANORA CHANTE MANNING,

Defendants–Appellants

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 2:09-CR-106-4

Before KING, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:[*]

William Michael Ward, Mark Anthony Bazaldua, and Lanora Chante Manning appeal from their convictions for conspiring to possess, and possessing, with intent to distribute a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and § 846.  The defendants principally argue that the trial evidence was insufficient to support their convictions because it showed only that they intended to defraud purchasers by selling them bricks of fake cocaine made of Bisquick.  Yet the trial evidence revealed that, to entice

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

prospective buyers to purchase the fake cocaine, the defendants intended to distribute samples of *real* cocaine. Accordingly, we AFFIRM their convictions.

I.

In July 2009, a federal grand jury returned a two count indictment against Ward, Bazaldua, Manning, and Charlous Deral Brown. Count One charged conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. § 846. Count Two charged possession with intent to distribute a mixture and substance containing a detectable amount of cocaine in violation of § 841(a)(1) and (b)(1)(C). Co-conspirator Brown pleaded guilty, and in April 2010, the remaining three co-conspirators were tried by jury.

At trial, Brown testified as a cooperating witness and stated that he had participated in a scheme with Ward, Bazaldua, and Manning to sell fake cocaine. Brown explained that, as part of the scheme, the co-conspirators had planned to place packets of real cocaine into wrapped bricks of Bisquick; the real cocaine would be provided as a purported sample of their wares, in case a potential buyer wanted to test a brick.

According to Brown's testimony, after they had agreed to participate in the scheme, Bazaldua rented a vehicle in Houston, Texas with money given him by Manning. Bazaldua also obtained an ounce of real cocaine, which Manning was responsible for safekeeping. Brown, Bazaldua, and Manning then traveled to Tunica, Mississippi, and upon their arrival went to a casino. There, the "stick man" at a craps table—who happened to be a confidential information (CI)—indicated to Brown that he was interested in purchasing cocaine. The CI gave Brown his phone number and they arranged for Brown to provide the CI a sample. When the CI phoned Brown the next morning, Brown and Bazaldua retrieved five grams of real cocaine from Manning and went to meet the CI at a gas station off the highway. They passed the sample of real cocaine to the CI.

Brown and Bazaldua then set out to gather Bisquick and other materials for their rendevous with Ward, the designated fake-brick builder. Eventually, the team set up shop at a hotel, and in their hotel room, Ward proceeded to wrap several bricks of Bisquick. Brown, meanwhile, retrieved a small packet of real cocaine from Bazaldua and Manning, who were in the hotel lobby, and returned to the room. Ward hollowed out a portion of one of the fake bricks and inserted the packet of real cocaine. Soon thereafter, law enforcement agents descended on the hotel. The agents seized five bricks of fake cocaine, including the one brick loaded with real cocaine. They also arrested Brown and seized real cocaine from his pocket.

At trial, the Government's chemistry and narcotics expert testified that four of the bricks contained no controlled substance, but the fifth brick contained a small packet of real cocaine—10.19 grams. The Government's expert further testified that the small bag from Brown's pocket contained 11.13 grams of cocaine. According to the expert, both packets of real cocaine appeared to contain pure cocaine that had not been cut with adulterants.

After the close of the Government's case, Bazaldua, Ward, and Manning moved for a judgment of acquittal on the grounds that (1) the evidence only showed that the defendants intended to distribute fake cocaine, and (2) while the indictment charged the defendants with conspiring to possess and possessing a "mixture and substance" containing cocaine, the evidence adduced by the Government showed that the real cocaine at issue was pure and had not been mixed with anything else. The district court denied the motions. Following the close of the defendants' cases, the defendants renewed their motions for a judgment of acquittal, but their motions were denied. The jury ultimately found each of the defendants guilty on both counts of the indictment: conspiracy to possess and possessing with an intent to distribute a mixture and substance containing a detectable amount of cocaine. On appeal, the defendants contest the sufficiency of the evidence to support their convictions, arguing again that

(1) the evidence only showed that they intended to distribute fake cocaine and (2) the evidence did not show that they conspired to possess or possessed a "mixture or substance" containing real cocaine.

## II.

Because the defendants each moved for a judgment of acquittal both at the close of the Government's case and at the close of all of the evidence, they have preserved their sufficiency claim for appellate review. *See United States v. Ferguson,* 211 F.3d 878, 882 (5th Cir. 2000). Accordingly, we review to determine whether a rational jury could have found the essential elements of the offenses of conviction beyond a reasonable doubt. *See United States v. Lopez-Moreno*, 420 F.3d 420, 437–38 (5th Cir. 2005). We do "not evaluate the weight of the evidence or the credibility of the witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *United States v. Delgado*, 256 F.3d 264, 273–74 (5th Cir. 2001).

## III.

To establish a conspiracy to distribute a controlled substance, the Government must prove beyond a reasonable doubt: "(1) the existence of an agreement between two or more persons to violate narcotics laws; (2) the defendant[s'] knowledge of the agreement; and (3) [their] voluntary participation in the conspiracy." *United States v. Valdez*, 453 F.3d 252, 256–57 (5th Cir. 2006). To establish possession of a controlled substance with intent to distribute, the Government must prove beyond a reasonable doubt that the defendants had (1) knowledge, (2) possession of a controlled substance, and (3) an intention to distribute the controlled substance. *Delgado*, 256 F.3d at 274.

On appeal, the defendants challenge the sufficiency of the evidence proving that they intended to distribute cocaine. The defendants argue that the trial evidence only showed that they intended to defraud purchasers by selling them fake cocaine; the purpose of their scheme and their intention was to swindle drug users and dealers out of their money, not to violate narcotics laws.

4

But this argument entirely ignores a central component of the overall scheme to which the defendants all agreed: their intention to distribute real cocaine samples to prospective buyers. The evidence showed that, in furtherance of this scheme, Bazaldua and Manning transported real cocaine from Houston to Tunica. While in Tunica, the co-conspirators kept the cocaine close, in case they would need it to facilitate a deal. Indeed, Brown and Ward retrieved real cocaine from Bazaldua and Manning and inserted it into Ward's fake brick; according to Brown's testimony, the point of such loading was to distribute the real cocaine as a sample. Brown even testified, and the defendants do not dispute on appeal, that Bazaldua and Brown retrieved a five-gram bag of cocaine from Manning and distributed this sample of real cocaine to the CI. When viewed in the light most favorable to the Government, such trial evidence would allow a rational jury to conclude that the defendants had conspired to possess and possessed with an intent to distribute real cocaine in the form of samples.

To be sure, the factual scenario presented by this case is somewhat unusual. In the typical case, a defendant will conspire to possess and possess with an intent to distribute cocaine in order to directly secure a monetary payoff. Here, the defendants conspired to possess and possessed with an intent to distribute cocaine in order to indirectly secure a monetary payoff—by tricking prospective buyers into paying for boxes of Bisquick. Both scenarios, however, showcase the same culpable conduct: an intention to distribute real cocaine. The Bisquick is merely a red herring.

Plainly, an intention to distribute a *sample* of real cocaine is still an intention to distribute real cocaine. Conspiracy to possess and possession with intent to distribute any amount of cocaine, however small, is punishable under 21 U.S.C. §§ 841 and 846. *See United States v. Pineiro*, 377 F.3d 464, 466 (5th Cir. 2004) (noting that § 841(b)(1)(C) establishes maximum sentences for any amount of cocaine less than 500 grams), *vacated on other grounds by Pineiro v. United States*, 543 U.S. 1101 (2005). In *United States v. Gordon*, for example,

this court relied on a sample to uphold the defendants' convictions for knowingly distributing cocaine, in violation of § 841(a)(1), against a sufficiency of the evidence challenge.  876 F.2d 1121, 1124–25 (5th Cir. 1989).  Although the defendants in *Gordon* argued that they had not delivered the 500 grams of cocaine charged in the indictment, we found that they had delivered a sample of that cocaine to a special agent posing as a cocaine buyer, and we concluded that the mere provision of the sample was enough to sustain their convictions for simple distribution.  *Id.* at 1125 ("[Q]uantity is not an element of the crimes proscribed by §§ 841(a)(1) and 846 and need only be proved when the Government seeks an enhanced penalty.") (internal quotation marks omitted).[1] Likewise in this case, the small quantity of cocaine at issue will not avail Ward, Bazaldua, or Manning.  The trial evidence showing that the defendants conspired to possess and possessed with intent to distribute samples of cocaine was sufficient to allow a rational jury to conclude that the defendants conspired to possess and possessed with intent to distribute real cocaine.

In addition, although Bazaldua and Manning contend that the distribution of pure cocaine could not support their convictions because the indictment alleged that they conspired to possess and possessed a "mixture and substance" containing cocaine, the evidence needed only to establish beyond a reasonable doubt that they conspired to possess and possessed with intent to distribute a Schedule II "controlled substance" to support their convictions.  21 U.S.C. § 841(a)(1) and (b)(1)(C).  Pure cocaine is such a controlled substance.  § 812(c).

AFFIRMED.

---

[1] *See also United States v. Workopich*, 479 F.2d 1142, 1147 (5th Cir. 1973) (noting that "a 'sale' is not required" to establish distribution under § 841(a)(1)).