# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2023

Lyle W. Cayce
Clerk

No. 21-60857

Ahmed Hussain Mana,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A043 308 602

Before Stewart, Dennis, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Ahmed Hussain Mana seeks review of the Board of Immigration Appeals' (BIA) decision, adopting and affirming the Immigration Judge's (IJ) decision, which denied Mana's application for cancellation of removal and for deferral of removal under the Convention Against Torture (CAT). We DISMISS IN PART and DENY IN PART Mana's petition for review.

---

[*] This opinion is not designated for publication. See 5th Cir. R. 47.5.

No. 21-60857

**I.**

Ahmed Hussain Mana, a native and citizen of Yemen, became a lawful permanent resident of the United States in 1992.  In February 2015, he was convicted in Louisiana state court of distributing a controlled substance, namely hydrocodone, in violation of La. R.S. 40:967(A)(1) and was sentenced to five years in prison.

In March 2020, Mana was charged with being removable under 8 U.S.C. § 1227(a)(2)(B)(1) for having been convicted of a violation of state or federal law relating to a controlled substance, as defined in 21 U.S.C. § 802, other than a single offense of possession for one's own use of 30 grams or less of marijuana.  Through counsel, Mana admitted the charge and was found to be removable based on his 2015 state drug distribution conviction.  He applied for cancellation of removal under 8 U.S.C. § 1229b(a) as well as protection under the CAT based on his fear of being harmed in Yemen by the current government or due to the general violence there.

The IJ denied Mana's applications for cancellation of removal and CAT protection, ordering his removal to Yemen.  The IJ determined that Mana was not credible due to inconsistent and implausible statements within his testimony; inconsistencies between his testimony, his 1996 naturalization application, and his CAT application; and his failure to provide reasonably available corroborating evidence from his relatives.  The IJ determined that Mana was not entitled to cancellation of removal or CAT protection due to his lack of credibility.  Alternatively, the IJ concluded that Mana was statutorily ineligible for cancellation of removal because his 2015 state drug distribution conviction constituted a disqualifying aggravated felony under the drug-trafficking-crime prong, or, alternatively, under the illicit-trafficking-in-a-controlled-substance prong, of 8 U.S.C. § 1101(a)(43)(B). Additionally, assuming arguendo that Mana testified credibly, the IJ

nevertheless denied his claim for CAT protection based on his failure to demonstrate that such relief was warranted.

Mana filed a counseled appeal to the BIA. He asserted that he was eligible for cancellation of removal because his 2015 conviction was neither a drug trafficking crime nor illicit trafficking in a controlled substance and thus did not constitute a disqualifying aggravated felony. He argued that the state offense was broader than the federal offenses and that the IJ erred by considering that the specific facts of his case involved commercial dealings. Additionally, Mana asserted that he had presented sufficient evidence to show that he faced a likelihood of future torture in Yemen and was thus entitled to CAT protection.

The BIA dismissed Mana's appeal and ordered his removal. Specifically, the BIA affirmed the IJ's determination that Mana's 2015 conviction constituted both a drug trafficking crime and illicit trafficking in a controlled substance and was thus an aggravated felony that disqualified him from cancellation of removal. Additionally, the BIA affirmed the IJ's denial of CAT protection, "assuming without deciding [Mana's] credibility." The BIA concluded that the IJ's "assessment of the evidence support[ed] her determination that [Mana] did not meet his burden and demonstrate—either by testimony or by means of country conditions evidence in the record—that it is more likely than not that he would be subjected to torture if returned to Yemen, inflicted by or at the instigation of or with the consent or acquiescence (including willful blindness) of an official or other person acting in an official capacity."

Mana filed a timely petition for review, reiterating his argument that his 2015 state conviction was not a disqualifying aggravated felony and additionally arguing the BIA's denial of CAT protection was not based on substantial evidence.

## II.

Under 8 U.S.C. § 1252(a)(2)(C), this court lacks jurisdiction to review a removal order where, as here, the alien was removed on account of his commission of a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B). *See Alexis v. Barr*, 960 F.3d 722, 730 (5th Cir. 2020). However, § 1252(a)(2)(D) preserves this court's jurisdiction to consider constitutional claims and questions of law. *Id.* at 730. Whether Mana's 2015 conviction for distributing hydrocodone in violation of La. R.S. § 40:967(A)(1) constitutes an aggravated felony is a question of law over which this court has jurisdiction. *See Shroff v. Sessions*, 890 F.3d 542, 544 (5th Cir. 2018). Additionally, this court has jurisdiction to review Mana's factual challenge to the agency's denial of his request for CAT protection, as the Supreme Court has held that § 1252(a)(2)(C) and (D) do not preclude review of such challenges. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1694 (2020).

In evaluating a petition for review, this court considers the BIA's decision, as well as the decision of the IJ to the extent that it influenced the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). Factual findings are reviewed for substantial evidence, which means that the alien has "the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). "By contrast, this court reviews the BIA's legal determinations de novo, including whether the [BIA] applied an inappropriate standard or failed to make necessary findings." *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (internal quotation marks and citation omitted). "If this court determines that the BIA applied an inappropriate standard or neglected necessary findings, the court will vacate the decision and remand to the BIA." *Id.*

No. 21-60857

## A. Cancellation of Removal

When a long-term lawful permanent resident alien is inadmissible or deportable, the Attorney General may cancel the removal of the alien under 8 U.S.C. § 1229b(a) if he meets several requirements, one of which is that he "has not been convicted of any aggravated felony."  "An alien applying for relief or protection from removal has the burden of proof to establish" that he "satisfies the applicable eligibility requirements."    8 U.S.C. § 1229a(c)(4)(A)(i); *see Ochoa-Salgado v. Garland*, 5 F.4th 615, 617 & n.2 (5th Cir. 2021).  Mana argues that the BIA erred in finding his 2015 state conviction was a disqualifying aggravated felony.  This court reviews de novo the legal questions whether a prior conviction constitutes an aggravated felony and whether an alien is statutorily eligible for discretionary relief in the form of cancellation of removal. *Flores-Larrazola v. Lynch*, 840 F.3d 234, 237 (5th Cir. 2016).

Courts employ a categorical approach to determine whether a state offense qualifies as an aggravated felony for immigration purposes. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).  Under the categorical approach, the elements of the state statute defining the crime of conviction, rather than the particular facts of the prior case, are examined to determine whether the state conviction categorically fits within the federal definition of an aggravated felony.  *Id.*; *see Mathis v. United States*, 579 U.S. 500, 504-05 (2016).  The state conviction is not an aggravated felony if the minimum conduct criminalized by the state statute falls outside of the federal definition, as long as there is a realistic probability that the state would in fact apply its statute to that minimum conduct. *Moncrieffe*, 569 U.S. at 190-91.

However, if the state statute has a divisible structure whereby its elements are listed in the alternative, that single statute essentially defines multiple crimes; in that circumstance, the modified categorical approach may

5

be utilized. *Mathis*, 579 U.S. at 505. This approach permits a court to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505-06. "If those limited elements for the state statute are narrower than or equivalent to the elements that comprise the analogous federal law," there is a match. *United States v. Frierson*, 981 F.3d 314, 317 (5th Cir. 2020).

The state statute at issue here, La. R.S. 40:967(A), prohibits "knowingly or intentionally" either (1) "produc[ing], manufactur[ing], distribut[ing], or dispens[ing] or possess[ing] with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II" or (2) "creat[ing], distribut[ing], or possess[ing] with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II." This court has explained that "[t]he fact that there are different punishments for different drugs and activities evidences that the types of drugs in Schedule II are elements and not merely a list of illustrative means," and thus, § 40:967(A) is a divisible statute subject to the modified categorical approach. *Frierson*, 981 F.3d at 318. The relevant documents in this case establish that Mana was convicted of violating § 40:967(A)(1) by distributing hydrocodone, which is a Schedule II controlled substance under La. R.S. 40:964.

As relevant here, § 1101(a)(43)(B) defines "aggravated felony" as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Illicit trafficking in a controlled substance and a drug trafficking crime are two independent routes for a state drug felony to qualify as an aggravated felony. *See Flores-Larrazola*, 840 F.3d at 238; *Arce-Vences v. Mukasey*, 512 F>3d 167, 171 (5th Cir. 2007); *see also Daas v. Holder*, 620 F.3d 1050, 1054

(9th Cir. 2010).  The BIA determined Mana's 2015 state conviction met both definitions.  We address each in turn.

"[I]llicit trafficking" in a controlled substance is "any state, federal, or qualified foreign felony conviction involving the unlawful trading or dealing in a controlled substance as defined by Federal law."  *Flores-Larrazola*, 840 F.3d at 240 (quoting *Matter of L–G–H–*, 26 I. & N. Dec. 365, 368 (BIA 2014)).  A violation of § 40:967(A) is a felony, as it is punishable by imprisonment at hard labor, *see* La. Code Crim. Proc. art. 933, and hydrocodone is a controlled substance under federal law, 21 U.S.C. § 812(a); 21 C.F.R. § 1308.12(b)(1)(vi).  The only question remaining is whether Mana's state conviction involved the "trading or dealing" of hydrocodone.

"Trading or dealing" requires "some sort of commercial dealing."  *Arce-Vences*, 512 F.3d at 171; *see also Lopez v. Gonzales*, 549 U.S. 47, 53 (2006).  Under Louisiana law, "distribute" means to "to deliver a controlled dangerous substance," La. R.S. 40:961(15), and the Louisiana Supreme Court has held that delivery means simply "to transfer possession or control," *State v. Martin*, 310 So. 2d 544, 546 (La. 1975).  "[W]ith regard to distribution, the law does not distinguish between selling the drugs, giving them away, or sharing them."  *State v. Smith*, 2007-847, p. 10, (La. App. 3 Cir. 1/30/08), 974 So. 2d 883, 888.  Thus, Mana argues—and we agree— that because § 40:967(A) does not require commercial dealing, it is broader than the generic offense of "illicit trafficking in a controlled substance."  The BIA relied on Mana's testimony at his immigration hearing that he bought pills from one person and sold them to another to satisfy the commercial-dealing component of "illicit trafficking," but—as the Government concedes—this was error, as a reviewing court must "examine what the state conviction necessarily involved, not the facts underlying the case." *Moncrieffe*, 569 U.S. at 190-91.

No. 21-60857

Instead, the Government argues Mana's state conviction nevertheless qualifies as a drug trafficking crime. A drug trafficking crime is defined as "any felony punishable under the Controlled Substances Act [CSA] (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2); *Sarmientos v. Holder*, 742 F.3d 624, 628 (5th Cir. 2014). As relevant here, the CSA makes it unlawful for any person "knowingly or intentionally" to "manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). A violation of § 841(a)(1) involving a Schedule II controlled substance like hydrocodone is a federal felony carrying a maximum prison sentence of twenty years under § 841(b)(1)(C). *See* 18 U.S.C. § 3559(a)(5) (requiring a maximum prison sentence of more than one year to be a felony under federal law); *Lopez*, 549 U.S. at 60 (holding a state offense constitutes a felony punishable under the CSA only if it proscribes conduct punishable as a felony under that federal law).

Mana again argues that distribution under § 40:967(A) is broader than distribution under § 841(a) because remuneration is not required for his state offense but is necessary for the federal offense. To the contrary, we have concluded that "a 'sale' is not required" to constitute "'distribution' under 21 U.S.C. § 841(a)(1)." *United States v. Workopich*, 479 F.2d 1142, 1147 (5th Cir. 1973); *see also United States v. Ward*, 482 F. App'x 922, 926 & n.1 (5th Cir. 2012) (same); *Jacob v. Holder*, 335 F. App'x 370, 373 (5th Cir. 2009) ("Remuneration is not required in order to satisfy the requirements of 'delivery' or 'distribution' of a controlled substance under the federal statute."). Thus, employing the modified categorical approach and reviewing the elements of each offense, Mana's state offense consists of elements sufficiently narrow to fall within the generic federal crime. *Cf. Frierson*, 981 at 318 (concluding possession with intent to distribute cocaine

8

No. 21-60857

under § 40:967(A)(1) was sufficiently narrow to fall within possession with the intent to distribute under § 841(a)). Accordingly, the BIA did not err in determining Mana had committed an aggravated felony and was thus ineligible for cancellation of removal.

## B. CAT

To obtain deferral of removal under the CAT, "an applicant must show that it is more likely than not that he would be tortured if returned to his home country." *See Zhang v. Gonzales*, 432 F.3d 339, 344-45 (5th Cir. 2005) (internal quotation marks and citation omitted); *see* 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). Torture is defined as "'any act by which severe pain or suffering . . . is intentionally inflicted on a person' by or with the acquiescence of a public official for informational, punitive, coercive, or discriminatory purposes." *Arulnanthy v. Garland*, 17 F.4th 586, 597 (5th Cir. 2021) (alteration in original) (quoting 8 C.F.R. § 1208.18(a)(1)). In evaluating the likelihood of future torture, the agency must consider "all evidence relevant to the possibility of future torture," including "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal." *Id.* at 597 (quoting § 1208.16(c)(3)). "[E]vidence of past torture inflicted upon the applicant" must also be considered. § 1208.16(c)(3)(i).

Mana argues the BIA's determination that he is not likely to be tortured is not supported by substantial evidence in light of the country condition evidence he submitted recounting human rights violations in the Yemen civil war and the fact he was detained four times in 2007 or 2009.[1]

---

[1] Mana points to this evidence in the context of an overall substantial evidence challenge. However, to the extent Mana also argues 1) the BIA procedurally erred when it both failed to consider his previous detentions and glossed over the State Department's reports of torture in Yemen, and 2) the BIA employed the wrong legal test by concluding that he failed to show that he is at risk of a particularized threat of torture, we conclude that because Mana failed to exhaust these claims, we lack jurisdiction to review them. *Cf.*

However, Mana has not shown "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *See Chen*, 470 F.3d at 1134.

In *Morales v. Sessions*, 860 F.3d 812, 818 (5th Cir. 2017), we concluded that "Petitioner's presentation of various news articles and reports describing El Salvador as particularly dangerous for unnamed women and children . . . [were] too general to warrant 'relief under the Convention Against Torture,'" and "Petitioner's assertion that she—specifically—will more likely than not be tortured 'rests wholly upon surmise and speculation.'" *Id.* (first quoting *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 351–52 (5th Cir. 2006); and then quoting *Montgomery-Ward & Co. v. Sewell*, 205 F.2d 463, 468 (5th Cir. 1953)); *see also Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019) ("Generalized country evidence tells us little about the likelihood state actors will torture any particular person including Qorane.").

As in *Morales*, Mana's country condition evidence does not compel the conclusion that he specifically will more likely than not be tortured. *Cf. Morales*, 860 F.3d at 818. Moreover, as the IJ noted,[2] based on Mana's descriptions, his brief detentions did not rise to the level of severe pain or suffering to amount to torture. *Cf. Majd v. Gonzales*, 446 F.3d 590, 597 (5th Cir. 2006) (concluding two brief detentions during which the petitioner was

---

*Martinez-Guevara v. Garland*, 27 F.4th 353 361 n.9 (5th Cir. 2022) ("Insofar as Martinez-Guevara contends only that the BIA erred procedurally, her claim that the BIA ignored relevant evidence is unexhausted because she did not first raise it in a motion for reconsideration."); *Avelar-Oliva v. Barr*, 954 F.3d 757, 766 (5th Cir. 2020) ("Avelar-Oliva's contention that the BIA misapplied the standard of review should have been presented to the BIA in a motion for reconsideration.").

[2] As here, where the BIA stated its agreement with the IJ's assessment that the applicant failed to establish his case, the IJ's decision affected the BIA's decision and is thus reviewable. *See Zhu*, 493 F.3d at 593-94.

roughed up and questioned did not amount to torture).  The BIA's finding was supported by substantial evidence.

## III.

The petition for review is DISMISSED IN PART as to Mana's unexhausted claims and DENIED IN PART as to the remainder of his claims.