UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Young ALFARO,
Defendant–Appellant.

No. 89–5634.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1990.

Nancy B. Barohn, San Antonio, Tex., for defendant-appellant.

Michael W. McCrum, LeRoy Morgan Jahn, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GEE, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

Richard Young Alfaro, the defendant, pleaded guilty to distributing 250 grams of heroin in violation of 21 U.S.C. § 841(a)(1). In this appeal, he challenges the decision of the trial court to increase his sentence level by three for his leadership role, and its finding that he did not accept personal responsibility for his criminal conduct. We affirm.

## I

On March 21, 1988, Alfaro met with a confidential informant to whom he said that he had ten pounds of methamphetamine to sell and could supply all the cocaine and marijuana one could handle. On March 24th, he again met with the informant. This time he sold the informant one ounce of methamphetamine, and he said that he had nine pounds of methamphetamine left and would continue to have a large supply in the future.

On April 1st, Alfaro met again with the informant, sold the informant two ounces of methamphetamine, and "fronted"[1] him two additional ounces of the drug. On May 13th, he met with the informant and an undercover officer. Alfaro sold the undercover officer four ounces of methamphetamine and fronted the officer another ounce.

On June 10th, Alfaro talked with the undercover officer several times on the telephone. He told the officer that he did not have any methamphetamine available but had something else if the officer would come over to his bail bonds company. The officer met with Alfaro at his bail bonds office, where he told the officer that he had twenty-one ounces of "pure Peruvian heroin" for sale at $1,000 per ounce. Alfaro took the officer into a back room in the business where the officer saw four other individuals, at least two of whom were cutting and packaging the heroin. Alfaro and the officer returned to the front of the building and there the officer purchased five ounces (125 grams) of heroin for $5,000 and was fronted another five ounces of heroin. Alfaro also told the officer that he could obtain kilogram amounts of cocaine and large amounts of marijuana.

On June 18th, the officer returned to the location of the bail bond business to pay the $5,000 owed for the five ounces of heroin fronted to the officer on June 10th. The undercover officer also arranged to purchase fifty pounds of heroin for $44,-000. The transaction was to take place

---

**1.** The term "fronted" refers to a transfer of drugs in which one person transfers the drugs to a second person in return for the second person's promise to pay the sales price within a few days.

later the same day. Alfaro sent his "Number 2" man to pick up the heroin, and the undercover officer left, supposedly to obtain the money. When the "Number 2" man returned, the police were waiting, search warrant in hand. The police recovered approximately 131 grams of heroin, and arrested Alfaro as he was fleeing the scene. During his flight he tossed a pistol to the ground and packets of heroin onto various roof tops.

Based on this evidence, a grand jury indicted Alfaro on six counts.[2] He agreed to plead guilty to the fourth count, which was based on the June 10th sale. In return, the government agreed to drop the other five charges.

The district court accepted the plea agreement. The presentence report states that the defendant was an organizer or leader of a criminal activity involving five or more persons, under Sentencing Guidelines § 3B1.1, and that the defendant had failed to accept responsibility for his actions under Sentencing Guidelines § 3E1.1(a). Alfaro objected to this part of the report. After considering the defendant's objections, the trial court found that the defendant was a manager or supervisor, rather than an organizer or leader, of the operation, and that there were four other people involved. The trial court also found that the defendant did not accept personal responsibility for his actions. Alfaro argues that the trial court erred on these two issues.

## II

This court will "uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous."[3] In making its sentencing decisions, the district court may properly consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."[4] When any factor material to the sentencing determination is reasonably in dispute, then the trial judge:

> shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.[5]

Both parties suggest that our decisions in *United States v. Rodriguez*[6] and *United States v. Flores*[7] require a defendant to show that the information in the presentence report is "materially untrue" to reverse a factual finding, by the trial court, based on the presentence report. We read the cases as an application of the clearly erroneous standard. The *Flores* and *Rodriguez* cases appear to require a defendant to show that the information relied upon by the trial court was "materially untrue" to demonstrate that the findings of the trial court were clearly erroneous.[8] Because we consider that the words "mate-

---

**2.** The six counts were: (1) conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846; (2) distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (3) conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846; (4) distribution of approximately 250 grams of heroin, in violation of 21 U.S.C. § 841(a)(1); (5) distribution of approximately 125 grams of heroin, in violation of 21 U.S.C. § 841(a)(1); and (6) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

**3.** *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989); *see* 18 U.S.C.A. § 3742(e) (West Supp. 1990).

**4.** Sentencing Guidelines § 6A1.3(a); *see also United States v. Murillo*, 902 F.2d 1169, 1172

(5th Cir.1990); 18 U.S.C.A. § 3661 (West 1985); Sentencing Guidelines § 1B1.4.

**5.** Fed.R.Crim.P. 32(c)(3)(D); *see* Sentencing Guidelines § 6A1.3(b) ("The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. . . . .")

**6.** 897 F.2d 1324 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990).

**7.** 875 F.2d 1110 (5th Cir.1989).

**8.** The "materially untrue" language followed a tortuous pathway before finding itself in *Flores* and *Rodriguez*. It began with the Court's decision in *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). In that case, the Court held that a state violated due process

rially untrue" are not a very helpful description of our task, and, indeed, find them confusing, we review briefly the relevant standards for the trial court and the appellate court in reviewing sentencing determinations.

We have held that the party seeking an adjustment in the sentence level must establish the factual predicate justifying the adjustment.[9] We have also held that the appropriate analysis for the district court is whether the party seeking to adjust the sentence level has proved by a preponderance of the relevant and sufficiently reliable evidence the facts necessary to support the adjustment.[10] Requiring the party seeking an adjustment to prove the necessary facts by the preponderance of the evidence appropriately balances the uniformity established by the base sentence levels with the flexibility introduced by the various factors that adjust that level.[11] On appeal, our task is to ensure that the trial court properly applied the legal standards established by the guidelines to its factual findings. Our review of sentencing decisions follows our

---

if, in the absence of counsel, it based a defendant's sentence, where he had pleaded guilty, on "materially untrue" assumptions concerning the defendant's criminal record. 334 U.S. at 740–41, 68 S.Ct. at 1255. On its way to *Flores*, the language next appears in our decision in *United States v. Horsley*, 519 F.2d 1264, 1267 (5th Cir. 1975), *cert. denied*, 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d 350 (1976). At the time we decided *Horsley*, the decision whether to reveal a presentence report was left to the discretion of the trial judge. And in *Horsley*, we wrote, relying on *Shelton v. United States*, 497 F.2d 156, 159 (5th Cir.1974), that the defendant had "the initial burden of showing that the court relied on misinformation ...", 519 F.2d at 1266, in establishing that the trial court abused its discretion in refusing to release the presentence report to the defendant. We distinguished the *Townsend* due process standard: "This holding is not applicable in situations where, in the absence of counsel, an individual is sentenced on the basis of assumptions concerning his criminal record which are materially untrue." 519 F.2d at 1267 (citing *Townsend*, 334 U.S. at 741, 68 S.Ct. at 1255, 92 L.Ed. 1690 (1948)). In *United States v. Clements*, 634 F.2d 183, 186 (5th Cir.1981), we cited *Horsley* for the proposition that the defendant had the initial burden to show that the trial court had relied on misinformation in the presentence report to establish that the trial court abused its discretion by refusing to release the presentence report. We went on to hold that the defendant had failed to show that the trial court abused its discretion because the defendant did not show that the trial court relied on the report in determining the sentence. 634 F.2d at 186. No mention is made of the materially untrue language from *Townsend*. In 1975, Congress amended Fed.R.Crim.P. 32(c)(3) to require the sentencing judge to allow the defendant or his counsel to see the presentence report, upon request, prior to sentencing, except in certain specific instances. Act of July 31, 1975, Pub.L. No. 94–64, 89 Stat. 376. Presumably, the amendment abrogated any need for the standards discussed in *Clements* and *Horsley*, which were designed to determine when the trial judge had abused his discretion by not releasing the report. But not so according to our decision in *Flores*. In *Flores*, we cite *Clements* for the proposition that the defendant must show that the presentence report was "materially untrue" to obtain reversal of the sentencing decision of the trial court. 875 F.2d at 1113. But, in *Clements*, we did not even consider the materially untrue language. In addition, the materially untrue language used by the Court in *Townsend* involved a due process violation, not a review of the factual findings of the trial court. In *Clements*, we did refer to "misinformation" in the presentence report as a necessary element in showing that the trial judge had abused his discretion in not releasing the presentence report to the defendant, but we did not address the showing necessary either at the appellate level to uphold a finding of, or at the trial level to find, the facts that would serve as a basis for sentencing. Because neither *Flores* nor *Rodriguez* otherwise justify their application of the "materially untrue" language, we refuse to read the recitation of the phrase by those cases as anything more than a simple application of the clearly erroneous rule. *Cf. United States v. Mueller*, 902 F.2d 336, 347–48 (5th Cir.1990) (citing *Flores* for the proposition that the defendant must establish that the district court relied on "materially untrue" information to establish a due process violation).

9. *See Mueller*, 902 F.2d at 347; *see also United States v. Cuellar–Flores*, 891 F.2d 92, 93 (5th Cir.1989) (defendant has the burden when seeking a decrease in the sentence level).

10. *See United States v. Mourning*, 914 F.2d 699, 706 (5th Cir.1990). Every other circuit to address the issue concurs in this result. *See United States v. Rodriguez*, 896 F.2d 1031, 1032 (6th Cir.1990); *United States v. Kirk*, 894 F.2d 1162, 1163–64 (10th Cir.1990); *United States v. Howard*, 894 F.2d 1085, 1089 (9th Cir.1990); *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir.1989); *United States v. Urrego–Linares*, 879 F.2d 1234, 1238–39 (4th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989).

11. *Cf. McDowell*, 888 F.2d at 291.

usual review standards: determinations of legal principles, we review *de novo* ;[12] factual findings, we review for clear error.[13]

Because the appellant challenges the factual findings of the trial court, we review for clear error. The Court, in *Anderson v. City of Bessemer City*,[14] described our task as follows:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.[15]

Using this standard, we consider whether the district court's findings, (1) that Alfaro was a supervisor or manager of the criminal activity and that the criminal activity involved five or more participants, and (2) that he did not accept responsibility for his actions, are plausible in the light of the record as a whole.

### III

In making its factual findings, the trial court had before it the presentence report and the affidavit of the undercover officer who prepared it in support of the search warrant. Despite the defendant's objections to the finding of the presentence report that four other individuals had participated in the sale on June 10th, he did not request an evidentiary hearing on the issue, nor did he submit affidavits or other sworn testimony to rebut the evidence contained in the officer's affidavit and the presentence report.

■ To the extent that the defendant's objections to the presentence report and the trial transcript reflect unsworn assertions, we are reluctant to consider them as evidence in our review of the findings of the trial court.[16] Unsworn assertions do not bear "sufficient indicia of reliability to support [their] probable accuracy",[17] and, therefore, should not generally be considered by the trial court in making its factual findings.[18]

■ We have held that a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines.[19] An affidavit prepared and submitted in support of a search warrant also bears sufficient indicia of reliability to be considered by the trial judge in making sentencing decisions.

### A. The Three Level Increase for the Defendant's Role

■ Section 3B1.1 of the Sentencing Guidelines provides:

> fashion. The informality is to some extent explained by the fact that particular offense and offender characteristics rarely have a highly specific or required sentencing consequence. This situation will no longer exist under sentencing guidelines. The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair.
>
> Sentencing Guidelines § 6A1.3 commentary.

---

12. *See, e.g., Mourning*, 914 F.2d at 704.

13. *See Sarasti*, 869 F.2d at 806; *see* 18 U.S.C.A. § 3742(e) (West Supp.1990).

14. 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

15. 470 U.S. at 573–74, 105 S.Ct. at 1511; *see also Murillo*, 902 F.2d at 1173 (5th Cir.1990) (applying the *Anderson* standard in reviewing a district court's findings under the Sentencing Guidelines).

16. If a defendant reasonably expects us to overturn the factual findings of the trial court, he should strive to provide a thorough *evidentiary* record on the factual issues. Often this will require a more formal sentencing procedure than was required before the sentencing guidelines, as recognized by the commentary to Sentencing Guidelines § 6A1.3:

> In current practice, factors relevant to sentencing are often determined in an informal

17. Sentencing Guidelines § 6A1.3(a).

18. *See* Sentencing Guidelines § 6A1.3 commentary ("Unreliable allegations shall not be considered.") *See also United States v. Johnson*, 823 F.2d 840, 842 (5th Cir.1987) (the unsworn assertions of the prosecuting attorney at the sentencing hearing cannot serve as an evidentiary basis for factual findings significant in the sentencing determination).

19. *See, e.g., Murillo*, 902 F.2d at 1173.

Based on the defendant's role in the offense, increase the offense level as follows: ...

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels....[20]

We have interpreted this section to apply only if four other individuals are involved in the specific offense to which the defendant pleaded guilty.[21] We do not require each "participant" to have committed each element of the offense; rather, we require each of the participants to play some role in bringing about the specific offense charged.[22]

■ Alfaro does not deny that he managed or supervised the drug sale, but denies that there were four other people involved in the sale. The presentence report described the events on the day of the offense as follows:

On June 10, 1988, the same undercover officer had two telephone conversations with [the defendant] which resulted in the acknowledgment that ten ounces of heroin were available. The undercover officer then went to Alfaro Bail Bonds at 1138 North Flores Street in San Antonio and met with [the defendant]. [The defendant] took the undercover agent to the rear of the bail bonds building in which four individuals were in a room cutting and packaging heroin.

The affidavit submitted by the undercover officer in support of the search warrant states:

Later on June 10, 1988 the undercover officer met with [the defendant] at Alfaro's Bail Bonds at 1138 N. Flores. The undercover officer saw five individuals including [the defendant] who were cutting or testing a baseball sized ball of a brownish substance which [the defendant] said was "pure Peruvian heroin."

At the sentencing hearing, the defendant asserted that two of the four individuals present in the back room on June 10th were employees of his bail bonds business. He admitted that they were present, but contended that they were not participating in the drug sale, as required by the language of the Sentencing Guidelines § 3B1.1 ("five or more *participants*").[23]

Even if we accept this assertion as evidence, at best, it creates a credibility question for the trial judge: Does the trial judge believe the presentence report and the affidavit of the undercover officer that all four of the individuals were preparing the heroin, or the unsworn assertion of the defendant that two of the individuals, while present, were not helping to prepare the heroin for sale? The trial court chose to accept the facts presented by the officer's affidavit and the presentence report. Such resolution of the issue is plausible. We affirm the decision of the trial court to increase the sentence level by three for the defendant's role as a supervisor or manager in the drug sale, under Sentencing Guidelines § 3B1.1(b).

20. Sentencing Guidelines § 3B1.1.

21. *See Mourning,* 914 F.2d at 704–05; *United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990). Because we find sufficient evidence to support the trial court's finding that four other individuals were involved in the June 10th sale, we need not decide whether the recent amendment to the Introductory Commentary mandates a modification of our holding in *Barbontin.* Amendments to the Sentencing Guidelines for the United States Courts, 55 Fed.Reg. 19202 (1990).

22. *See United States v. Manthei,* 913 F.2d 1130, 1135 (5th Cir.1990) ("We are satisfied that the

'offense' for § 3B1.1(a) purposes includes 'criminal activity' greater in scope than the exact, or more limited, activities compromising the elements of the offense charged.... The § 3B1.1(a) adjustment in this case was 'anchored to the transaction leading to the conviction,' because the district court incorporated and considered the very activities and persons ('participants') that directly lead [sic] to the final distribution of the amphetamine produced as a result of the those activities of those persons.")

23. *See also* Sentencing Guidelines § 3B1.1 commentary ("1. A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.")

### B. Denial of a Two Level Reduction for Acceptance of Personal Responsibility

Section 3E1.1 of the Sentencing Guidelines provides:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.[24]

In *United States v. Mourning*,[25] we held that to obtain a reduction under section 3E1.1 the defendant must show that he accepts responsibility for all of his "relevant criminal conduct".[26] The case involved a defendant who pleaded guilty to charges of money laundering in exchange for the government's agreement to drop drug trafficking charges. The defendant expressed remorse and acceptance of his responsibility for the money laundering charge, but continued to deny his involvement in the drug trafficking offenses. Because he failed to accept his responsibility for this related conduct, the trial judge denied the two level decrease in sentence level requested by the defendant under section 3E1.1. We upheld the decision of the trial court.[27] To obtain the reduction, a defendant must show that he accepts responsibility for all "conduct demonstrating the intent, motive and purpose underlying his laundering of money, as well as the subsequent criminal conduct he induced, procured and willfully caused by use of these funds."[28]

 Similarly, here, although Alfaro said that he accepted responsibility for the June 10th sale, he denied his involvement in six other documented drug transactions between himself and the same undercover agents. His failure to recognize his involvement in these contemporaneous transactions undermined his credibility when he expressed his regrets over his role in the June 10th transaction.

Furthermore, the two level reduction is not automatically available simply because a defendant says at the sentencing hearing that he is sorry and that he accepts personal responsibility for his criminal conduct. His statements and actions, both before and during the sentencing hearing, must convince the trial judge that the defendant's remorse and acceptance of responsibility are sincere.[29]

In this case, Alfaro's statements at the sentencing hearing indicate that he decided to sell drugs for the money.

MR. ALFARO: ... And I was in the fix of my life, you know, my father died on me and I owe over $200,000 in bond forfeitures and $90,000 in bills and a whole bunch of stuff. I mean, these people—they send people over with, you know, suitcases of money time after time after time. That's the story of this thing....

I'm not an angel, but I just feel in my heart I'm accepting responsibility for what I did, but it all started with these people coming to me.

In reviewing the record as a whole, we cannot say that the district court committed clear error by finding that the defendant did not demonstrate an "affirmative acceptance of personal responsibility" given his somewhat contradictory statement at the sentencing hearing and his failure to acknowledge his role in the six other contemporaneous and connected drug transactions.

### IV

We affirm the sentencing decision of the trial court.

---

**24.** Sentencing Guidelines § 3E1.1(a).

**25.** 914 F.2d 699 (5th Cir.1990).

**26.** 914 F.2d at 705.

**27.** 914 F.2d at 706.

**28.** *Id.*

**29.** *See United States v. Fabregat,* 902 F.2d 331, 334 (5th Cir.1990); *cf. United States v. Barreto,* 871 F.2d 511, 513 (5th Cir.1989).