IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-40074
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CATHY EDGE BONE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:94-CR-56-4)
_____

December 3, 1996

Before KING, GARWOOD, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Cathy Edge Bone appeals her sentence following conviction for misprision of a felony in violation of 18 U.S.C. § 4. Bone argues that the district court erred in finding that she knew or reasonably should have known that more than $100,000 in funds derived from drug trafficking were laundered. Having reviewed

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

the record and the briefs of the parties, we hold that the district court's finding was not clearly erroneous.

## I. <u>BACKGROUND</u>

Bone was of one of 15 defendants named in a 57-count indictment including charges for drug-related activities and money laundering. Pursuant to a written plea agreement, Bone pled guilty to a one-count information charging that she committed the offense of misprision of a felony by concealing the money laundering activities of her codefendants. She subsequently was sentenced to 18 months imprisonment.

The section of the United States Sentencing Guidelines applicable to misprision of a felony is 2X4.1, which directs that the offense level should be nine levels below that for the underlying offense. The guideline section for the underlying offense of money laundering is 2S1.1, which establishes a base offense level of 20. According to the presentence report ("PSR"), three levels were added pursuant to U.S.S.G. § 2S1.1(b)(1) because Bone knew that the laundered funds were the proceeds of unlawful activity involving the manufacture, importation, or distribution of controlled substances. An additional one level was added pursuant to U.S.S.G. § 2S1.1(b)(2)(B) because it was determined that Bone was aware of more than $100,000 being laundered. The district court overruled Bone's objection at sentencing to this one-level increase. The

resulting offense level of 24 was then decreased by nine to yield an offense level of 15, which was subsequently reduced by two levels for acceptance of responsibility.

Bone's sole challenge on appeal is the addition of the one level based on knowledge of an amount in excess of $100,000.  The addition of this level increased the applicable guideline range from 10-16 months to 10-18 months.

## II. ANALYSIS

The guideline for money laundering includes special offense characteristics that are determined on the basis of acts and omissions caused by the defendant and all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity.  U.S.S.G. § 1B1.3(a)(1)(A), (B).  Application note 10 under § 1B1.3 states that in the case of misprision, "the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant."  The determination of what the defendant knew or should have known is a factual finding.  See United States v. Warters, 885 F.2d 1266, 1273 (5th Cir. 1989).  Accordingly, we review the district court's finding for clear error.  See United States v. Puig-Infante, 19 F.3d 929, 942 (5th Cir.), cert. denied, 115 S. Ct. 180 (1994).

3

Bone argues that the presentence report provides no indication as to what amount of money she knew or should have known had been laundered by others, but merely states generally that she was "aware of money laundering activities." Bone acknowledges that the addendum to the PSR refers to paragraphs 13 and 14 of the PSR to support a finding that Bone should have known that $134,564.94 had been laundered, and that the addendum states that the investigating agent reported that Bone had signature authority on the accounts through which money was laundered. She asserts, however, that these facts do not support a finding that she knew or should have known that more than $100,000 had been laundered. She argues that paragraphs 13 and 14 do not connect her to the bank accounts into which the cash was deposited, and that the addendum does not identify the time frame during which she allegedly had signature authority on the accounts. At sentencing, Bone contested her signature authority on these accounts. Accordingly, she contends that the one-level increase in her base offense level for laundering in excess of $100,000 is "without foundation."

The district court adopted the information in the PSR. Paragraph 13 states that in 1990, Bone's husband, Erskine Bone, opened an account at the Farmers and Merchants Bank in Burleson, Texas and deposited $25,000 into the account during that year. Bone admitted at sentencing that she was aware that her husband had received $25,000 from Raymond Bone before Raymond went to

4

jail for drug trafficking. Paragraph 13 also states that in 1989, Bone purchased the land in Atoka County, Oklahoma that served as the primary drug manufacturing site, and that the property owner was paid $4,100 as a down payment. At sentencing, Bone denied that she made the $4,100 down payment, but stated that she signed the contract of sale for the property while sitting at her dining room table.

Paragraph 14 of the PSR states that in 1990, Erskine bone opened an account at the Security One Federal Credit Union in Arlington, Texas and deposited a total of $105,464.94 in cash into the account during the years 1990-93. The addendum to the PSR states that these deposits consisted of laundered currency, that Bone had signature authority on the accounts at both Farmers and Merchants Bank and Security One, and that statements for each account were mailed to Bone's residence.

Bone's key challenge is to the district court's finding that she knew or should have known about the $105,464.94 in deposits. In addition to the facts stated above, the PSR indicated that at the time of the offense, Bone and her husband had a legitimate monthly income of $2,385, but total monthly expenses of $4,970. Bone was actively involved along with her husband in methamphetamine distribution. Bone also owned a tax service and helped other members of the drug distribution organization file their taxes.

5

The district court need only determine its factual findings at sentencing by a "preponderance of the relevant and sufficiently reliable evidence." United States v. Alfaro, 919 F.2d 962, 965 (5th Cir. 1990). In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). "[A] presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines." Alfaro, 919 F.2d at 966. "[T]he defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991).

Taking into account Bone's denial of signature authority on the two bank accounts, we nevertheless conclude that the district court had before it sufficient reliable evidence from which to find that Bone either knew or should have known of over $100,000 in laundered funds. This finding was not clearly erroneous.

AFFIRMED.