United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 16, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-30942

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEDD P. JONES,

Defendant-Appellant.

Cons. No.

No. 05-30998

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM H. CLARK,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, SMITH and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal arises from sentencing and restitution orders of the district court following the

convictions of Jedd Jones and William Clark. In March 2003, Jones pled guilty to one count of health

care fraud in violation of 18 U.S.C. § 1347. Approximately two years later, Clark pled guilty to the

same count. Jones and Clark appeal their sentences and the amount of restitution. We address

1

whether the district court erred in determining the offense level and amount of restitution owed by Jones and Clark based on the government's evidence. We conclude that the government submitted insufficient evidence to support the sentence enhancements and amount of restitution; therefore, we vacate the sentences and restitution orders and remand these cases to the district court for re-sentencing consistent with this court's opinion.[1]

## I. MEDICARE REGULATIONS

Medicare provides federal health insurance benefits for people age sixty-five and older and individuals with disabilities. The Medicare program permits health agencies to receive reimbursement for necessary reasonable costs related to patient care. Fiscal intermediaries contract to manage the Medicare program and administer the reimbursements, which entails reviewing bills and making payments. Medicare providers submit cost reports at the end of the year to settle annual costs. The Medicare regulations set forth specific guidance for providers that receive services from a related organization. The regulations state that "costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization."[2] 42 C.F.R.

---

[1] In this appeal, based on our decision to vacate the loss enhancement and restitution orders of both defendants, we do not reach the issues of whether the "related organizations" rule, under 42 C.F.R. § 413.17, applies to the conduct of individuals, or whether the Ex Post Facto Clause prohibits the sentencing of Clark under 18 U.S.C. § 1347.

[2] The regulations, 42 C.F.R. § 413.17, define *common ownership* and *control* as follows:
(b) Definitions–
(2) Common ownership. Common ownership exists if an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.
(3) Control. Control exists if an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

2

§ 413.17(a). Two organizations are "related" when "the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organizations furnishing the services, facilities, or supplies." 42 C.F.R. § 413.17(b)(1).

The Provider Reimbursement Manual, published by the Health Care Financing Administration ("HCFA"), explains the purpose of the "related party" regulation:

> (1) to avoid the payment of a profit factor to the provider through the related organization (whether related by common ownership or control), (2) to avoid payment of artificially inflated costs which may be generated from less than arm's length bargaining.

Provider Reimbursement Manual § 1000.

At the end of the year, health care agencies submit reimbursement forms requiring the disclosure of goods or services purchased from a "related party." The fiscal intermediary receives this form with each cost report. During periodic audits, the fiscal intermediary also inquires about any related party transactions. Health care providers must disclose these relations because reimbursements are limited to the provider's actual cost or the cost of similar providers on the open market, whichever is the lesser amount, for related organizations. 42 C.F.R. § 413.17(c)(2). This regulation means that the "actual cost must not exceed the price for which comparable services, products, or facilities could be purchased elsewhere." *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 n.5 (5th Cir. 2004) (citing 42 C.F.R. § 413.17).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Jones served as a principal of Health One Management, Inc. ("Health One"). For Medicare purposes, Health One was "related to" Riverbend Rehabilitation Hospital ("Riverbend") in Covington,

3

Louisiana, through common ownership and control.[3] Jones incorporated Health One and later served as its Secretary-Treasurer. Clark, the co-defendant of Jones, served as President and part owner. Riverbend paid fees to Health One pursuant to a full-service management contract and Jones and Clark pursuant to a management and consulting agreement. Jones and Clark, however, failed to notify the fiscal intermediary, TriSpan Health Services ("TriSpan"), of the relation between Riverbend and Health One. Riverbend received reimbursements for various costs, including management fees to Health One, Clark, and Jones, for the treatment of Medicare patients at Riverbend. TriSpan eventually requested competitive bids to determine the reasonableness of the management fees. In response to TriSpan's inquiries, Riverbend submitted fictitious bids and board meeting minutes. TriSpan referred the case to the Office of the Inspector General for investigation and prosecution.

The government indicted Jones and Clark on several charges because of their failure to disclose the relationship between the two organizations. They pled guilty to only one count of health care fraud under 18 U.S.C. § 1347. Prior to sentencing, Jones and Clark filed objections to the Presentence Report ("PSR"). The government and the defendants filed memoranda on the question of whether Medicare suffered a loss from the offense. On July 20, 2005, the district court conducted an evidentiary hearing on the issue. The government offered the PSR to prove the amount of loss to Medicare. The PSR listed the full amount of Medicare's reimbursements to Riverbend for payments to Health One, and payments to Jones and Clark, individually.

---

[3]In this case, the co-ownership and control components grew from the use of holding companies and what the district court referred to as a "puppet owner." Due to Jones's and Clark's guilty pleas and the complexity of the ownership network, we do not discuss the history of the entities' formation and ownership.

The defense's experts testified that Riverbend's costs were reasonable and within the range of typical payments to non-related organizations and individuals. One defense witness, the former director of a Medicare fiscal intermediary, testified that TriSpan never reopened the previously settled cost reports or conducted an audit to determine the reasonableness of the cost reports. The government's rebuttal witness, Robertson, alleged that TriSpan could not identify comparable local facilities to Riverbend. The government offered the salary of the Chief Operating Officer ("COO") of St. Francis Medical Center in Monroe, Louisiana, a larger acute-care hospital, as a frame of reference for the district court to determine the reasonableness of Riverbend's costs. The government's witness admitted that Riverbend was not comparable to St. Francis Hospital.

The district court accepted the PSR as evidence regarding the actual costs incurred by Riverbend. The court then reduced the loss amount by the estimated value of performed services. The court again reduced the loss amount by the cost of bed leases evidenced in Riverbend's cost reports. In October 2005, the district court entered judgment and sentenced Clark and Jones. Pursuant to U.S.S.G. § 2F1.1, the district court added a thirteen-level enhancement to Clark's sentence and a ten-level enhancement to Jones's sentence. The court gave additional enhancements for their roles in the offense and reductions for acceptance of responsibility. The district court sentenced Clark to thirty-months imprisonment and three-years supervised release. Due to his cooperation with the government's investigation, Jones received a lesser sentence of one-year and one-day imprisonment.[4] The district court also ordered Jones and Clark to jointly and severally pay restitution in the amount of $1,473,500, and Clark to individually pay additional restitution in the amount of $1,236,293. Jones and Clark timely filed their notices of appeal.

[4]On January 6, 2006, we granted Jones and Clark bail pending the outcome of this appeal.

### III.  STANDARD OF REVIEW

This court reviews the amount of loss, a factual finding, for clear error.  *United States v. Sanders*, 343 F.3d 511, 520 (5th Cir. 2003).  The finding must be plausible in light of the record as a whole.  *Id.*  We review de novo the interpretation and application of the Sentencing Guidelines.  The district court receives wide latitude to determine the amount of loss and should make a reasonable estimate based on available information.  *United States v. Cothran*, 302 F.3d 279, 287 (5th Cir. 2002).  We must determine in this appeal whether the sentencing court applied an acceptable method of calculating the amount of loss, which must bear a reasonable relation to the actual harm of the offense.  *United States v. Randall*, 157 F.3d 328, 330-31 (5th Cir. 1998).

### IV.  DISCUSSION

A.

To impose a sentence enhancement, the government must establish that Medicare suffered an actual loss.  *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990).  Under U.S.S.G. § 2F1.1, the amount of loss, in cases involving the diversion of government program benefits, equals "the value of the benefits diverted from intended recipients."[5]  Jones and Clark argue that they should not be liable for the entire amount of Medicare reimbursements because Medicare would have paid Health One's actual costs notwithstanding disclosure of the relationship between Health One and Riverbend.  Moreover, the government failed to show either the differential between Medicare's reimbursements and Health One's actual costs or the reasonable value of Health One's services.  Accordingly, Jones and Clark should not receive an enhancement from the base offense level and restitution order.

---

[5]Section 2F1.1 has been replaced by § 2B1.1; however, the probation officer properly applied the more favorable 1997 guidelines.  *See United States v. Harms*, 442 F.3d 367, 379 n.7 (5th Cir. 2006).

The unsworn assertions of the government's attorney do not provide a sufficiently reliable basis for a defendant's sentence. *United States v. Patterson*, 962 F.2d 409, 415 (5th Cir. 1992). Similarly, "[b]ald conclusory statements do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993). The government contends that the PSR contains reliable, specific evidence of the loss amount. For this reason, the PSR's loss calculations met its burden of proof. The government also maintains that Jones and Clark did not show material inaccuracies in the PSR calculations, and their submission of false bids and meeting minutes during TriSpan's investigation hindered its ability to make an accurate cost assessment. The PSR usually provides sufficiently reliable evidence for the district court's consideration. *United States v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002). In this instance, however, the Probation Department acknowledged that the loss calculation drew only upon information from the government without an audit and independent analysis of Health One's actual or reasonable costs. The government has failed to show why the submission of false bids and meeting minutes to TriSpan precluded a later audit by the government pursuant to its power to subpoena the records of Riverbend, Health One, Jones, and/or Clark.

In *United States v. Gupta*, several corporate defendants and Gupta were convicted for conspiracy to submit false Medicare claims because the defendants failed to disclose a relation between the health care provider and management consultant. 463 F.3d 1182, 1193 (11th Cir. 2006). The district court found that the government suffered no loss because the defendants charged less than the daily cost cap for services. *Id.* at 1196. The government cross-appealed the district court's sentence, arguing that amount of loss equaled the difference between Medicare's reimbursements to the provider and the management company's actual costs. *Id.* at 1199. The government also

7

submitted expert reports to establish the profit factor. *Id*. at 1195-96. The Eleventh Circuit reasoned that the district court may use one of two common calculations: (1) the loss to the losing victims method; and (2) the defendant's gain or net gain method. *Id.* at 1200 (citing *United States v. Bracciale*, 374 F.3d 998, 1003 (11th Cir. 2004) (internal quotations omitted). The court held that

> In this case, the district court's finding of no loss was an unreasonable method. The district court did not apply relevant calculation[s] as to the greater of intended or actual loss.... Moreover, the purpose of the related party rule is to prevent the payment of artificially inflated consulting fees.

*Id.* at 1200. Accordingly, the Eleventh Circuit vacated and remanded the case for re-sentencing. *Id.* We find persuasive the Eleventh Circuit's net gain method for calculating loss under these similar circumstances. In this case, the government presented no evidence to support the PSR. And even though "loss need not be determined with precision," without showing that the amounts paid to Health One were either unreasonable or greater than its actual cost, the government has shown no recoverable loss to support the sentence enhancements and restitution orders. The district court's reliance upon the PSR's loss amounts, which included Medicare's total reimbursement costs, constituted an unreasonable calculation of the actual loss.

B.

In the context of a contract, the court must credit the defendant for the value of the performed services. *United States v. Sublett*, 124 F.3d 693, 694 (5th Cir. 1997). The government asserts that Jones and Clark failed to prove any services rendered to Riverbend from Health One. The government bears the burden of proof, however, to prove whether Jones and Clark performed these services. *Alfaro*, 919 F.2d at 965. At the evidentiary hearing, the government neglected to

8

substantiate its claim. Speculation from the government witnesses regarding whether Health One actually provided services failed to meet its evidentiary burden.

The government also maintained that identifying no comparable facilities in the immediate area thwarted its ability to calculate an accurate valuation of performed services. The inability to find a comparable facility does not mean that the services have no value. In contrast to the government, Jones and Clark put forth evidence, through the testimony of Robert Hicks, an expert in health care accounting, hospital consulting, management contracts, and intermediary audits of management contracts, that Riverbend paid Jones, Clark, and Health One, in the mid-level range of similar services provided through a non-related organization. Hicks discussed his methodology at length, including the hospitals relied upon for comparison. The district court discredited Hicks's testimony without explanation, other than questioning whether Jones and Clark actually performed any services, even though the government presented no evidence that the services were not performed.

The district court valued all the services provided at only $150,000 a year. The court based this valuation on the $178,000 salary of the COO at St. Francis Hospital, but because St. Francis Hospital is significantly larger than the facilities at issue in this case, the court determined $150,000 was a reasonable yearly amount for the management of Riverbend. Nothing in the record, neither the district court opinion nor the government witnesses testimony, establishes that the St. Francis COO position was comparable to the work performed by Clark, Jones, and Health One, collectively. The two hospitals provided fundamentally different patient services in different locations. Moreover, the government presented no evidence reflecting the differences between the hospitals, the patient services provided, what the employees did to earn their salaries, or what other employees were responsible for various management tasks.

9

The government witness also did not consider the specific situation facing Riverbend when Clark and Jones took management control. In the hearing transcript, defense counsel refers to numerous debt and personnel problems existing at Riverbend, which the government witness admitted could possibly necessitate a higher salary for management and consulting services. The district judge seemingly overlooked these factors in adopting the COO salary as an appropriate comparison.[6]

Although the trial court is only required to make a reasonable estimate of loss, *United States v. Jimenez*, 77 F.3d 95, 99 n.4 (5th Cir. 1996), we conclude that the portion of the loss calculation based on an extrapolation from the COO salary of a typical medical facility was unreasonable. There is insufficient evidence in the record to support the court's valuation of the services involved in this case.

## V. CONCLUSION

We vacate the loss enhancement determined by the district court because the government failed to meet its burden of proof to establish the amount of loss suffered by Medicare as a result of Jones's and Clark's criminal behavior. The government presented no evidence on the following requisite facts: the profit factor, if any, Jones and Clark gained by failing to disclose the relation between Riverbend and Health One; whether Jones and Clark provided services to Riverbend; and a comparable facility to determine the reasonableness of management and consulting fees paid to Health One, Jones, and Clark. Accordingly, the district court may not apply any loss enhancement on re-sentencing. For these reasons, we VACATE the sentence and restitution orders of Jones and

---

[6]The district judge recognized the additional difficulties facing the particularly rural Riverbend facility and stated he took this into account when setting the $150,000 amount. There is no discussion, however, of any economic analysis of the two areas or systematic way in which the judge analyzed this factor.

10

Clark, and REMAND this case to the district court for re-sentencing not inconsistent with this opinion.