# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 10-10416

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 29, 2012

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY CHARLES BRUTEYN,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Jeffrey Bruteyn sold investors secured debt obligations ("SDOs") based on the loans his company made to used-car purchasers. He misrepresented his credentials and insurance coverage on the investments and marketed his investment offerings as though they were as safe as FDIC-backed certificates of deposit. At trial, Bruteyn represented himself but was chastised by the court

No. 10-10416

several times for making factual assertions in examining witnesses without taking the stand himself.

Bruteyn was convicted. On appeal, he challenges (1) the admission of a civil order at trial; (2) the legal theory supporting his conviction; (3) the district court's management of his *pro se* representation; (4) the sufficiency of the evidence; and (5) the sentence. Finding no error, we affirm the conviction and sentence.

I.

Bruteyn managed AmeriFirst Funding, Inc. ("AmeriFirst"), a Dallas-area corporation that financed used-car purchases. To raise capital, AmeriFirst sold SDOs based on its loans to car buyers.

To sell SDOs, Bruteyn produced promotional materials that understated investor risk and overstated insurance coverage. He used a network of brokers to lure investors with the false promise that the SDOs were as safe as FDIC-insured certificates of deposit. He falsely told investors that he had an M.B.A. from the Wharton School of Business and a J.D. from Baylor Law School and that his family owned Hess Corporation and would cover investor losses. He also failed to disclose to investors his expulsion from the National Association of Securities Dealers ("NASD").

The Securities and Exchange Commission ("SEC") instituted an emergency enforcement action against AmeriFirst and obtained a temporary restraining order ("TRO") freezing its assets. Of the $58.7 million invested in AmeriFirst, only $34.1 million had been returned to investors at the time of sentencing.

Bruteyn was indicted for securities fraud and represented himself at trial. A jury convicted him on all nine counts, and the district court sentenced him to

2

No. 10-10416

twenty-five years in prison, three years' supervised release, and almost $7.3 million in restitution.

## II.

Bruteyn challenges the admission of the TRO at trial. Because he did not object at trial, we review for plain error. Bruteyn must show that "(1) there was error, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009) (citation omitted).

The government introduced the TRO into evidence to help the jury understand the role of AmeriFirst's receiver and the process by which the court froze the company's assets. The TRO was signed by a federal district judge, finding good cause to believe that Bruteyn was violating securities laws and misusing investors' funds.

Bruteyn argues that the government prejudiced his case by presenting the jury with prior judicial findings implying that he indeed had violated the law. But he blunted any prejudice when he introduced a letter from the court-appointed receiver, explaining that the judge "entered orders freezing assets" after "considering evidence presented by the SEC." That admission made the TRO merely cumulative. Even if assumed to be error, the TRO's admission did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" when it merely underscored a fact Bruteyn himself presented.

## III.

Bruteyn alleges that the district court allowed the jury to convict him on

No. 10-10416

an invalid alternative theory. There are two ways to prove the harmlessness of alternative-theory error. *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1905 (2012). According to *Neder v. United States*, 527 U.S. 1 (1999), "a reviewing court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to [an acquittal] with respect to the [valid theory of guilt]." *Skilling*, 638 F.3d at 482 (alteration in original; internal quotation marks omitted). Under a separate, but still valid, line of cases, "an alternative-theory error is harmless if the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory." *Id.*

At trial, the government dropped any charges alleging that Bruteyn had aided or abetted the securities fraud of others. Bruteyn now urges that in abandoning its aiding-and-abetting theory, the government similarly abandoned any argument that he indirectly caused the mail to be used in furtherance of his own frauds. The argument is creative but unsupported by any legal authority. The district court made no alternative-theory error.


IV.

Bruteyn challenges the district court's comments on his failure to testify arising from the court's management of his *pro se* representation. As a general matter, "judges are to be permitted wide discretion in exercising their power to control federal trials." *In re Perry*, 345 F.3d 303, 309-10 (5th Cir. 2003) (internal quotation marks omitted). Assuming Bruteyn adequately objected to the court's

No. 10-10416

comments on his failure to testify,[1] the standard of review is still a "high thresh-old." *United States v. McMillan*, 600 F.3d 434, 452 (5th Cir. 2010). "Reversal is not warranted unless the improper comment had a clear effect on the jury." *Id.*

On multiple occasions, the district court, in managing the scope of cross-examination, commented on Bruteyn's right to testify. For example, outside the presence of the jury, the court reminded Bruteyn, "you need to be very careful with suggesting things in questions or comments that you can't prove independently of your own testimony." Later, in the presence of the jury, the court informed Bruteyn,

> I'm going to tell you one more time. You may not state facts. If the facts are established by other documents or other testimony, you may refer to it. You have the right to testify in the case if you wish. You also have a constitutional right not to do so. Unless you do so, you may not state facts to the jury in your questioning of the witnesses.

This court has found no error in a very similar case, in which "the record clearly reflect[ed] that appellant, on at least two occasions, was warned of his making unsworn statements in the presence of the jury and the trial judge admonished him" in similar language. *United States v. Lepiscopo*, 429 F.2d 258, 260 (5th Cir. 1970). The district court's admonishments here, as in *Lepiscopo*, "did not constitute a comment on defendant's failure to testify but rather reflected his right to take the stand and testify under oath if he so desired." *Id.*

---

[1] Bruteyn does not point to any specific objections to the court's commentary on his right to testify, but the back-and-forth between him and the court on this issue may constitute an adequate objection. Because we find no error, we need not decide whether Bruteyn properly objected.

No. 10-10416

## V.

Bruteyn complains of the district court's restrictions on his questions to witnesses, also arising from the court's management of his *pro se* representation. We review alleged violations of the Confrontation Clause of the Sixth Amendment *de novo*, applying a harmless-error analysis. *United States v. Diaz*, 637 F.3d 592, 597 (5th Cir.), *cert. denied*, 132 S. Ct. 270 (2011).

The district court admonished Bruteyn for asserting facts through his questions to witnesses, warning him,

> [W]hat you cannot do is what you are attempting to do, which is to have your cake and eat it too. That is, not to testify, but make statements to the jury through your questions. That you may not do. That is to take advantage in a materially unfair way of your rights under the Fifth Amendment, and I will not permit it. I have not permitted it. I will not permit it. It is because you are in that situation that you may not use your questions as a substitute for testimony. So in that regard you, representing yourself, are different from what a lawyer could do under the circumstances. You may not do everything that a lawyer could do. There are certain things that you are saying that you cannot say, because you are also the defendant, and are relying on your rights under the Fifth Amendment.

Bruteyn bases his argument on the court's general limitations on his questioning, summarized above, not on any particular line of questioning or issue that he was not allowed to develop. His largely conclusional arguments give us no Sixth Amendment reason to second-guess the district court's management of his *pro se* representation.

## VI.

Bruteyn questions the sufficiency of the evidence. Viewing "all evidence and all reasonable inferences drawn from it in the light most favorable to the

No. 10-10416

government," we review whether "a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Fambro*, 526 F.3d 836, 839 (5th Cir. 2008).

A securities dealer may not "make any untrue statement of a material fact or . . . omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. "[A]n omission is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997) (internal quotation marks omitted).

Bruteyn challenges evidence of his failure to disclose his NASD disciplinary history as not material and thus insufficient to support his conviction. But "[b]ecause materiality is a mixed question of law and fact, it is usually left for the jury." *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996). Because Bruteyn gives no reason to disturb the verdict, we will not do so.[2]

Bruteyn also raises a knottier issue, namely, the extent to which one can *wilfully* omit a material fact where there is no certainty *ex ante* about what constitutes a material fact. But even if he was not subjectively aware that his NASD history was material, Bruteyn does not dispute knowledge of his duty not materially to mislead AmeriFirst's investors, *e.g.*, by his assertions about where

---

[2] Bruteyn's NASD violation history includes the association's conclusions that he "executed unauthorized transactions, failed to follow customer instructions, guaranteed securities account of customer against loss, and made misrepresentations to a public customer." Given that that history parallels the allegations in this case, it is likely that investors receiving the information "would have viewed it as significantly altering the mix of information available." *Peterson*, 101 F.3d at 380.

No. 10-10416

he attended school and the nature of insurance for the SDOs.[3]

## VII.
### A.

Bruteyn raises multiple challenges to his sentence.  This court reviews "a sentence to 'ensure that the district court committed no procedural error . . .' and to 'consider the substantive reasonableness of the sentence under an abuse-of-discretion standard.'"  *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).  We review the district court's application of the sentencing guidelines *de novo* and its factual findings for clear error.  *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009).

### B.

Not all facts supporting Bruteyn's sentence were submitted to the jury, he complains, similarly urging that the additional investors included in his presentence report (but not his indictment) were the tail wagging the dog in terms of his exposure at sentencing.  But "the sentencing  court is entitled to find by a preponderance of the evidence all facts relevant to the determination of a sentence below the statutory maximum."  *United States v. Hernandez*, 633 F.3d 370, 374 (5th Cir.), *cert. denied*, 131 S. Ct. 3306 (2011).  That rule precludes a "wagging the dog" challenge to sentencing.  *See United States v. Scroggins*, 485 F.3d

---

[3] *Cf. United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004) ("'[W]illfully' as it is used in [a related securities statute] means intentionally undertaking an act that one knows to be wrongful; 'willfully' in this context does *not* require that the actor know specifically that the conduct was unlawful.").

824, 834 (5th Cir. 2007).

Bruteyn also argues that because there is no reliable measure of actual or intended losses, his offense level should have been based only on his alleged gain.[4]  In reviewing the loss-calculation method, this court must determine "whether the sentencing court applied an acceptable method of calculating the amount of loss, which must bear a reasonable relation to the actual harm of the offense." *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007).

Bruteyn's argument relies on the legitimacy of AmeriFirst, the underlying business, and the difficulty that legitimacy creates in calculating loss.  If the district court had relied on intended loss, that argument may have been persuasive.  That court, however, relied on actual loss, calculated by arithmetic that Bruteyn does not dispute.  He was convicted of materially misrepresenting the risk inherent in the investments he marketed, and it was reasonably foreseeable that actual losses would result from the risks he concealed.  Thus, his loss-calculation challenge fails.

Bruteyn's offense level under the guidelines was increased four levels by the application of an enhancement for "a violation of securities law" where "the defendant was . . . a registered broker or dealer."  U.S.S.G. § 2B1.1(b)(18)(A)(ii) (2011).  The guideline's accompanying comment defines "registered broker or dealer" as "a broker or dealer registered or required to register."  § 2B1.1 cmt.

---

[4] Section 2B1.1(b)(1) of the 2011 United States Sentencing Guidelines Manual is a table of values under which the court calculates how much to increase the offense level based on the amount of loss.  Comment 3 directs the court how to determine loss, noting that "[s]ubject to the exclusions [for interest and costs], loss is the greater of actual loss or intended loss." § 2B1.1 cmt. n.3(A).  In the same comment, actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." § 2B1.1 cmt. n.3(A)(i).  It continues: "The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." § 2B1.1 cmt. n.3(B).

No. 10-10416

n.14(A) (2011) (incorporating 15 U.S.C. § 78c(a)(48)). In arguing reasonable reliance on prior legal advice, Bruteyn does not dispute that he now understands he was required to register. His sole alternative argument—that the registration enhancement is invalid for lack of a scienter requirement—is foreclosed by precedent.[5]

Bruteyn's final sentencing challenge highlights the disparity between his sentence and those of other defendants involved in the same scheme. Although the sentence must indeed "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), Bruteyn never attempts to classify his conduct as similar to other defendants', preferring instead to emphasize that he went to trial instead of accepting a plea bargain.

At sentencing, the government explained why Bruteyn was not similarly situated, but he does not address that issue in either brief filed here. The district court considered Bruteyn's argument and the government's explanation for the disparity and concluded that the sentence comported with the requirements of 18 U.S.C. § 3553. Bruteyn gives us no reason to disagree with the district court.

The conviction and sentence are AFFIRMED.

---

[5] *See United States v. Singleton*, 946 F.2d 23, 25 (5th Cir. 1991) ("The guidelines drafters have been explicit when they wished to import" a mens rea requirement.); *see also United States v. Vargas-Duran*, 356 F.3d 598, 611 (5th Cir. 2004) (en banc) (Garza, J., dissenting) (collecting cases in support of the proposition that this court "has refused to read a mens rea requirement into a sentencing guideline absent explicit direction to do so").